**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**SEPTEMBER SESSION, 1996**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9603-CR-00081** |
| | ) | |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CHRIS CRAFT** |
| **ANDREA D. MILES,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal-First Degree Murder)** |

**FILED**

January 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FOR THE APPELLANT:

CHARLES E. WALDMAN
147 Jefferson Avenue
Suite 1102
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELLEN H. POLLACK
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

JERRY C. BEASLEY, JR.
JERRY HARRIS
Assistant District Attorneys
201 Poplar Avenue - 3rd Floor
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Andrea D. Miles was convicted on August 11, 1995 in the Shelby County Criminal Court of murder in the first degree. She received a sentence of life imprisonment with the Tennessee Department of Corrections. Additionally, the court imposed a fine of $50.00 to be paid to the Criminal Injuries Compensation Fund. Appellant presents three issues for our consideration on this direct appeal: (1) whether the evidence was sufficient to sustain Appellant's conviction for first degree murder; (2) whether the trial court erred in failing to instruct the jury regarding post traumatic stress disorder; and (3) whether the prosecution failed to carry its burden of proving that Appellant was sane at the time the offense was committed.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The proof shows that on August 5, 1992, Appellant, along with Mr. Daris Barrett and Mr. Shinny Leverett, murdered Mr. Frank Miles, Jr., Appellant's husband. Mr. Miles was shot seven times, stabbed five times, and run over with his own automobile at his home in Memphis.

Appellant had been married to her husband for only one year at the time of his death; however, the couple had lived together for nine years before their marriage. On August 1, 1992, Appellant and the victim quarreled about child care. Because of this dispute, Mr. Miles hit Appellant, causing a cut over her right eye. On this same day, Mr. Eddie Walker, a friend of Appellant's, drove Appellant to her mother's house, to her sister's house, and to Daris Barrett's house before finally taking Appellant to the hospital to receive treatment for the

cut over her eye. While at Daris Barrett's house, Appellant showed Barrett the cut over her eye. According to Mr. Walker's testimony, Mr. Barrett then asked Appellant whether she would like her husband to be killed. Appellant allegedly replied, "Yes" and laughed. Shinny Leverett, a friend of both Appellant's and Mr. Barrett's, was present during this brief exchange between Mr. Barrett and Appellant.

Later that day, Appellant saw her husband at Methodist Central Hospital. Appellant went to the hospital in order to receive treatment for the cut above her eye. Mr. Miles went to the hospital for the purpose of receiving treatment for a gunshot wound which allegedly had been inflicted by Mr. Barrett and Mr. Leverett. According to Mr. Walker's testimony, upon being informed that her husband had come to the hospital to receive treatment, Appellant replied, "Fuck him. . . he need [sic] to die anyway."

Mr. Walker testified that on August 2, he overheard Appellant speaking to Mr. Barrett and that she informed him that her husband would be at home on Monday. Mr. Walker further testified that Appellant said that because this probably was the time when Appellant and her two friends intended to kill Mr. Miles.

Between August 1 and August 5, Appellant did not reside at her home. When Appellant phoned Mr. Walker and asked to borrow his car to retrieve some clothing from her home, Walker declined to lend his car to her and urged her not to return home so that an altercation between Appellant and her husband might be avoided.

Mr. Walker's warning notwithstanding, Appellant, Mr. Barrett, and Mr. Leverett took a cab to Appellant's home on August 5 at approximately 1:00 A.M. Appellant instructed the two men to get out of the cab approximately one block

from her residence. Appellant testified that she desired that Barrett and Leverett arrive unannounced as though they were visiting her. Appellant further stated that upon arriving, she left the door open in case the victim attempted to harm her. Mr. Miles was watching television in his bedroom when Appellant entered the house. Mr. Miles and Appellant then argued. When Barrett and Leverett arrived, a fight ensued. The victim was shot and stabbed as he ran from his bedroom, down the hallway, and out the front door to the driveway. Once Mr. Miles was no longer inside the house, the two males obtained the keys to his automobile. In their haste to depart from the murder scene, Barrett and Leverett drove the car over the victim as he lay in the driveway.

A trail of blood began in the bedroom and continued down the hall and onto the driveway. Teeth fragments were scattered around the front door and on the driveway. Broken knives were found throughout the house. A bullet hole was found in the front door and in a window.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant's first contention on this direct appeal is that the evidence was insufficient to sustain her conviction for first degree murder. We disagree.

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the

burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d 776, 779. Finally, TENN. R. APP. P. 13(e) provides, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d 776, 780.

At the time of this offense, Tenn. Code Ann. § 39-13-202(a) provided in pertinent part: "First degree murder is: (1) An intentional, premeditated and deliberate killing of another. . . ." Tenn. Code Ann. § 39-13-202(a)(1) (1991, Repl.).

Tenn. Code Ann. § 39-13-201 provided in part: "(b) The following definitions apply in this part: (1) `Deliberate act' means one performed with a cool purpose; and (2) `Premeditated act' means one done after the exercise of reflection and judgment. Premeditation may include instances of homicide committed by poison

-5-

or by lying in wait."  Tenn. Code Ann. § 39-13-201(b) (1991, Repl).  The State was required to prove each and every element of the offense beyond a reasonable doubt.

In State v. Brown, the Tennessee Supreme Court emphasized that "premeditation" and "deliberation" are two separate elements of first degree murder, each requiring independent proof.  836 S.W.2d 530, 538 (Tenn. 1992). The court explained that although premeditation may be formed instantaneously, Id. at 539, "it is now abundantly clear that the deliberation necessary to establish first degree murder *cannot* be formed in an instant.  It requires proof. . . that the homicide was `committed with `a cool purpose' and without passion or provocation.'"  Id. at 543.  This Court has held "that the elements of premeditation and deliberation are questions for the jury and may be inferred from the manner and circumstances of the killing."  State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993).  It is axiomatic that once a homicide has been proved, it is presumed to be murder in the second degree.  Gentry, at 3-4; Brown, 836 S.W.2d 530, 543. In order to elevate the offense to murder in the first degree, the State must carry its burden of proving both premeditation and deliberation.  Brown, 836 S.W.2d 530, 543.

In her brief, Appellant concedes that she caused the death of her husband; however, she claims that she did not possess the requisite intent to warrant a conviction for first degree murder.

At trial, Appellant testified that she shot and stabbed the victim.  Dr. Jerry Francisco, the County Medical Examiner for Shelby County, testified that his autopsy revealed that the victim died as a result of multiple gunshot and stab wounds.

Four days before the homicide, Mr. Barrett inquired of Appellant whether she would like to see her husband dead, she answered "yes" and laughed. On that same day, Appellant told the receptionist at Methodist Central Hospital: "Fuck him [the victim]. . . He need [sic] to die anyway." Moreover, Appellant and her two co-defendants traveled together to Appellant's home on the night of the murder. Finally, Appellant testified that she left her front door open so that her two friends could enter her home as though they were visiting her. There is ample evidence that this homicide was both premeditated and deliberate, and is therefore first degree murder.

### III. JURY INSTRUCTIONS

Appellant next complains that the trial court erred by not instructing the jury on post traumatic stress disorder. She buttresses this statement by asserting that the instruction on post traumatic stress disorder was crucial in order for the jury to competently determine whether or not Appellant possessed the required intent necessary to convict her of first degree murder. Because Appellant neither objected to the trial court's jury charge nor tendered any special request that the trial court give a jury instruction on post traumatic stress disorder, she cannot now complain about this omission from the jury instructions. See, e.g., State v. Brewer, 932 S.W.2d 1, 16 (Tenn. Crim. App. 1996) (holding that as a general rule, "[i]n the absence of an objection or a special request, a defendant may not later raise an issue regarding an omission in the court's charge."). Id. (quoting State v. Norris, 874 S.W.2d 590, 600 (Tenn. Crim. App. 1993)). See also State v. Smith, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981) (holding that a defendant cannot "successfully assign as error the inadequacy of jury instructions unless a

special request for further instructions is made").    Therefore, Appellant has waived this issue on appeal.  Brewer, 932 S.W.2d 1, 16.

Despite Appellant's waiver of this issue, we will, nonetheless, briefly address the merits of her claim.  Although diminished capacity is not a complete defense to a criminal charge in Tennessee, evidence of diminished capacity may be considered by a jury in deciding whether the defendant possessed the mental state required to commit the offense.  State v. Phipps, 883 S.W.2d 138, 143 (Tenn. Crim. App. 1994).  However, Phipps is distinguishable from the case sub judice in three respects.  First, as noted above, unlike in Phipps, Appellant did not request the court to instruct the jury regarding post traumatic stress syndrome. Second, in this case, Appellant's primary defense is that of insanity, whereas the primary defense asserted in Phipps was that the defendant lacked the requisite mens rea necessary to commit the offense because of depression and post traumatic stress syndrome.  Id.  Finally, here, unlike in Phipps, the jury instructions, taken as a whole, did not "have the probable effect of excluding evidence of Appellant's mental state from the jury's consideration of the element of specific intent."  Id.  We, therefore, hold that the trial court did not err in the instructions given to the jury.

## IV.  PROSECUTION'S BURDEN OF PROOF WHERE INSANITY IS ALLEGED

Finally, Appellant argues that the prosecution failed to carry its burden of proving that Appellant was sane within the meaning of Tenn. Code Ann. § 39,11-501 (1991, Repl.), at the time of the offense.  Appellant further argues that the evidence affords no support for the jury's conclusion that she was sane at the time of the crime.  Because we find that the prosecution presented evidence

sufficient to satisfy its burden of proving sanity beyond a reasonable doubt, we affirm the conviction.

In every case, the law presumes initially that the accused is sane. State v. Jackson, 890 S.W.2d 436, 440 (Tenn. 1994). However, if the evidence raises a reasonable doubt as to the accused's sanity, the burden of proof rests with the prosecution to establish the defendant's sanity beyond a reasonable doubt. Id. Hence, sanity becomes an element of the offense. Id. (quoting State v. Clayton, 656 S.W.2d 344, 346 (Tenn. 1983)).

Tenn. Code Ann. § 39-11-501 provides in pertinent part: "(a) Insanity is a defense to prosecution if, at the time of such conduct, as a result of mental disease or defect, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of law." Tenn. Code Ann. § 39-11-501(a) (1991, Repl.).[1]

The State can satisfy its burden of proving the accused's sanity at the time of the commission of the offense by presenting evidence that is consistent with sanity and inconsistent with insanity. State v. Edwards, 540 S.W.2d 641, 646 (Tenn. 1976). This evidence may be in the form of expert and lay testimony on

---

[1] The significant alterations to Tennessee's insanity defense statute became effective July 1, 1995. Tenn. Code Ann. § 39-11-501 now provides:

> (a) It is an affirmative defense to prosecution that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature or wrongfulness of such defendant's acts. Mental disease or defect does not otherwise constitute a defense. The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
> (b) As used in this section, "mental disease or defect" does not include any abnormality manifested only by repeated criminal or otherwise antisocial conduct.
> © No expert witness may testify as to whether the defendant was or was not insane as set forth in subsection (a). Such ultimate issue is a matter for the trier of fact alone.

Tenn. Code Ann. § 39-11-501.

the issue or proof of acts or statements of the defendant at or very near the time of the offense. Id.

Two psychologists, both of whom had evaluated Appellant, testified at Appellant's trial. Dr. Lynn Donna Zager, a certified forensic examiner and Director of Clinical Services at Midtown Mental Health Center, testified on behalf of the prosecution. Dr. Zager testified that in conducting her evaluation of Appellant and in formulating her ultimate conclusions, she consulted numerous outside sources, namely, the police files; the District Attorney's files; statements of witnesses; Appellant's social, psychological, and medical histories; and the conflicting statements given by Appellant to the police. Dr. Zager further stated that she met with Appellant on two separate occasions for a total time of forty-five minutes. She also testified that after administering a competency assessment to Appellant, she believed that Appellant most likely suffered from post traumatic stress disorder. Finally, she rendered her expert opinion that though afflicted with a mental illness, Appellant nonetheless possessed the ability to appreciate the wrongfulness of her conduct and to conform her action to the requirements of law at the time of the crime.

Dr. Ann Quinn Phyfer, a clinical psychologist and Program Director at Memphis Mental Health Institute, testified on behalf of Appellant. Dr. Phyfer testified that in arriving at her opinion, she relied solely upon information gathered from interviews with Appellant. Like Dr. Zager, Dr. Phyfer concluded that

Appellant suffered from post traumatic stress disorder.[2]  However, Dr. Phyfer opined that at the time of the offense, Appellant's mental illness, i.e., post traumatic stress disorder, rendered her incapable of conforming her actions to the requirements of law.

The jury was entitled to accredit the testimony of Dr. Zager, and it apparently did so.  We decline to disturb its findings on appeal.  The judgment of the trial court is, therefore, affirmed.


_____
JERRY L. SMITH, JUDGE


CONCUR:



_____
JOE B. JONES, PRESIDING JUDGE


_____
DAVID H. WELLES, JUDGE

_____

[2] Appellant's post traumatic stress disorder was caused by the occurrence of several traumatic events.  In 1986, Appellant was abducted, robbed, raped, shot twice, and left for dead.  Twelve hours later, Appellant was discovered and taken to the hospital.  However, because of a gunshot wound to the back, she is a paraplegic.  Furthermore, Appellant's house burned down on the same day of the rape and shooting.  In January 1987, the youngest of Appellant's four children died of sudden infant death syndrome.  In 1991 following the couple's marriage, Mr. Miles severely burned Appellant's leg by pressing the sole of a hot iron to Appellant's thigh.  Apparently, Mr. Miles continued to abuse Appellant until his death.  Despite the testimony of severe spousal abuse, the jury obviously concluded that the murder of Mr. Miles was deliberate and planned.  Although we are sympathetic to Appellant's plight, we are not free to disturb the jury's verdict.